HOUCK, J.
The material part of the petition necessary to determine the question involved in this case is as follows: ' •
“Plaintiff states in his petition that on the fourteenth day of February, 1916, he was a regular employee of the Westerville Creamery Co., which had complied with the workmen’s compensation law by paying the required amount of premiums into the state insurance fund, and that on said date while in the course of his employment he was driving a milk wagon for said employer, and while so engaged in the course of his employment sustained an injury to his right eye by particles of hail or sleet striking him in the same, which caused a loss of vision in said right eye.”
A demurrer was filed to this petition and sustained by the trial judge.
Question: did the trial judge err, to the prejudice of the plaintiff in error (the plaintiff below), in this holding?
This question must be determined in the light of the proper construction placed upon Sec. 21 of the workmen’s compensation act (Sec. 1463-68 G. C.), and then properly applied to the facts stated in said petition.
Said section reads:
“Every employee mentioned in subdivision two of section fourteen hereof, who is injured, and the dependents of such as are killed in the course of employment, wheresoever such injury has occurred, provided the same was not purposely self-inflicted, on and after January 1, 1914, shall be entitled to receive, either directly from his employer as provided in section twenty-two hereof, or from the state insurance fund, such compensation for loss sustained on account of such injury or death, and such medical, nurse and hospital services and medicine, and such amount *734 of funeral expenses in case of death as is provided by sections thirty-two to forty inclusive of this act.”
Counsel in support of the demurrer insist that the injury of which Eversole complains was not received by him in the course of his employment, and that it was caused outside of and disconnected with same. Is this claim sound or unsound as measured by the intent and purpose of the Legislature in the enactment of the workmen’s compensation law, and in its use of the words, “in the course of his employment?”
What do these words mean, and what was the legislative purpose of same ?
It is presumed that the legislature had some aim, object and purpose in the passing of this law, and to us it seems clear and plain that the one purpose was to protect and care for the one who “earns his bread by the sweat of his brow,” the one who has not the means to carry indemnity insurance that is expensive and beyond his “purse strings.” Yes, and in ease of death to provide a fund to furnish food, clothing and shelter to the widow and children left behind.
We know of no more humanitarian law. Every word, sentence and line of this act bespeaks such an interpretation, and it must and does follow that it should be liberally construed in favor of a claimant under it.
Counsel for defendant in error rely upon the decision in the case of Fassing v. State, 95 Ohio St. 232 [116 N. E. 104], We have carefully examined this case, and do not think it decisive of the instant case for the reason that the real question at issue was not presented to the court or passed upon by it. The question here to be determined is: was the injury complained of received ‘ ‘ in the course of his employment. ’ ’
In the ease of State v. District Court of Ramsey Co., 129 Minn., 502 [153 N. W. 119], it was held:
‘ ‘ That where an ice man, who was required to follow a fixed route in substantial disregard of weather conditions, when a severe rain storm was in progress left his team and went to a tall tree just within the lot line, either for protection or in the performance of his duties in soliciting orders, and lightning struck the tree and killed him, that his dependents were entitled to the benefits of the workmen’s compensation act.”
*735 In our examination of similar acts in other states, and upon which many of the adjudicated cases base their decisions, the language used in the law is: “that where an injury arises out of and in the course of employment,” etc., but in our act the language used is, “in the course of employment.”
We think that a fair and proper interpretation of the latter language means that if one is about his master’s business, doing the work and performing the duties assigned him, and while thus engaged is injured, he comes within the purpose and intent of the legislative purpose of the act now before us for interpretation and construction. Any other construction it seems to us would be too narrow, and would, in effect, set aside and abrogate the real purpose of the law and what was contemplated and intended by its framers.
If we give to the language in question its natural and ordinary meaning, ever keeping in mind the humanitarian purposes of the makers thereof, we can reach but one conclusion, namely, that the claimant is entitled to compensation.
In the case of Industrial Commission v. Roth, 98 Ohio St. 34, 39 [120 N. E. 172], the court, through its learned Judge Donahue, says:
“In the construction of a law it is the duty of a court to give the words their usual and ordinary meaning, such meaning as they import to mankind in general, and not a forced or unusual definition (or construction), which may in its last analysis be technically correct, but wholly at variance with the common understanding of man. ’ ’
If we apply this rule to the language and act now under review, we are bound to find for the plaintiff in error.
The case of Industrial Commission v. Pora, 100 Ohio St., 218, while not decisive of the case at bar, yet it strongly points in that direction, and especially the rule of construction of the act now under discussion.
The chief Justice says:
“The real spirit of this act is to measurably banish technicality and to do away with the nicety of distinction so often observable in the law, and commands a liberal construction in favor of employees.”
*736 The court is unanimous in its judgment in finding error in the record prejudicial to the rights of the plaintiff in error; and having so found, the judgment of the common pleas court is reversed, and it is ordered that this case be remanded to the court below, with instructions to overrule the demurrer to the petition in this case.
Judgment reversed and case remanded.
Patterson and Shields, JJ., concur.